UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GROW FINANCIAL FEDERAL
CREDIT UNION F/K/A MACDILL
FEDERAL CREDIT UNION,
    Plaintiff/Counter-Defendant,

v.                                                                   Case No.: 8:10-CV-01874-EAK-AEP

JOSEPH A. WILLIAMS, JR.
AKA JOSEPH WILIAMS,
    Defendant/Counter-Plaintiff.
_____/

**ORDER ON PLAINTIFF'S MOTION TO DISMISS DEFENDAT'S COUNTERCLAIM WITH PREJUDICE**

THIS CAUSE is before this Court on Plaintiff's/Counter-Defendant's, GROW FINANCIAL FEDERAL CREDIT UNION F/K/A MACDILL FEDERAL CREDIT UNION ("Grow"), Motion to Dismiss Counterclaim with Prejudice (Doc. 29), and Defendant's/Counter-Plaintiff's, JOSEPH A. WILLIAMS, JR. AKA JOSEPH WILIAMS ("Williams"), Response thereto (Doc. 32). Grow moves this Court to dismiss Williams' Counterclaims for failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6) and with prejudice, as leave to amend would be futile.

This action was originally commenced in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County by Grow against Williams for $17,399.27 relating to Grow's repossession of a 2006 Cadillac DTS ("Cadillac") and $5,431.12 owed relating to a Visa card. Williams has allegedly defaulted in regard to both the vehicle and Visa card. Grow filed suit to recover Williams' deficiency after the sale of the Cadillac.

Williams' Second Amended Counterclaim contains five counts that pertain to Grow, which are as follows: Count I alleges violations of the Consumer Credit Protection Act, 15 U.S.C. §1601, et seq. ("CCPA") and the Fair Credit Reporting Act, 15 U.S.C. §1681, et seq. ("FCRA").; Count II alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 ("FDCPA"); Count III alleges

violations of the Uniform Commercial Code ("UCC"), Secured Transactions, Article §9-610(b) for Grows' alleged commercially unreasonable sale of the repossessed Cadillac; Count IV alleges violations of the UCC, Secured Transactions, Article §9-611(a)(b)(c) for Grows' alleged failure to provide Williams with timely, proper, and complete notification prior to the sale of the repossessed Cadillac; and, Count V alleges violation of the UCC, Article § 9-616(a)(b)(c)(d) for allegedly failing to notify Williams that deficiencies remained on the debt after Grow's sale was concluded.

I. Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must view the complaint in the light most favorable to the plaintiff. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). Thus, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89 (2007). The rules of pleading require only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2), Fed.R.Civ.P. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court expressly "retired" the "no set of facts" pleading standard under Rule 8(a)(2) that the Court had previously established in *Conley v. Gibson*, 355 U.S. 41, 47 (1957). *Twombly*, 550 U.S. at 563.

*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed. *Fernandez v. United States,* 941 F.2d 1488, 1491(11th Cir. 1991). Although the court is required to liberally construe a *pro se* litigant's pleadings, the court does not have "license to serve as *de facto* counsel for a party ... or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Investments, Inc. v. County of Escambia, Fla.,* 132 F.3d 1359, 1369 (11th Cir.1998) (citations omitted) (*overruled on other grounds by Randall v. Scott,* 610 F.3d 701 (11th Cir.2010)); *accord Giles v. Wal-Mart Distribution Center,* 359 F. App'x. 91, 93 (11th Cir.2009).

While a complaint attacked by a Rule 12(b)(6) motion need not be buttressed by detailed factual allegations, the plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. As a general proposition the rules of pleading do "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Judicial inquiry at this stage focuses on whether the challenged pleadings "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555). Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true. *Twombly*, 550 U.S. at 555-56.

The Supreme Court has since applied the *Twombly* plausibility standard to another civil action, *Ashcroft v. Iqbal*, 556 U.S. ----, 129 S.Ct. 1937 (2009). In evaluating the sufficiency of Iqbal's complaint in light of *Twombly's* construction of Rule 8, the Court explained the "working principles" underlying its decision in *Iqbal*. 129 S. Ct. at 1949. First, the Court held that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Second, restating the plausibility standard, the Court held that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show [n]'-'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). The Court suggested that courts considering motions to dismiss adopt a "two-pronged approach" in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Importantly, the Court held in *Iqbal*, as it had in *Twombly*, that courts may infer from the factual allegations in the complaint "obvious alternative explanation[s]," which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer. *Id.* at 1951-52 (quoting *Twombly*, 550 U.S. at 567). Finally, the Court in *Iqbal* explicitly held that the *Twombly* plausibility standard applies to all civil actions because it is an interpretation of Rule 8. *Id.* at 1953.

II. Discussion

Grow maintains that Williams' Second Amended Counterclaim fails to state a claim upon which relief can be granted and moves this Court to dismiss the Second Amended Counterclaim with prejudice alleging that an opportunity to amend would be futile. In regards to Count I and Williams' allegations of false reporting to Credit Reporting Agencies ("CRAs"), Grow asserts that nowhere in the Second Amended Counterclaim does Williams state what was allegedly reported, when the information was allegedly reported, to whom the information was allegedly reported, how the information was allegedly reported, or why the information allegedly reported violated the provisions of the FCRA. Grow further alleges that there is no private right of action for such a claim. In regards to Count II, Grow moves this Court to dismiss Count II on the same grounds, for failure to state a claim upon which relief can be granted. Specifically, Grow alleges that Williams fails to allege sufficient facts to establish the applicability of the FDCPA by failing to allege Grow is a "debt collector" as defined by the FDCPA. Grow avers that its attempt to collect debt owed to it by its own debtor is not actionable under the FDCPA.

Finally, in regards to Counts III, IV, and V, Grow moves this Court to dismiss all of the aforementioned counts for failure to state a claim upon which relief can be granted. In regards to Counts III through V, Williams alleges as follows: in Count III Williams alleges that Grow failed to provide Williams with a notification before disposition of collateral referring to the sale of the Cadillac; in Count IV Williams alleges that Grow failed to provide Williams with an explanation of calculation of surplus or deficiency pursuant to the UCC; and in Count V Williams alleges that Grow failed to sell the Cadillac in a commercially reasonable manner. Grow maintains that even assuming the car was disposed of in a commercially unreasonable manner, the type of consequential, special, and penal damages which Williams seeks are not recoverable for a secured party's failure to comply with Chapter 670 of the Florida Statutes. Grow is correct as §679.625(2), Florida Statutes 2009, forbids consequential, special, or penal damages, unless conduct is present that constitutes an independent claim under Florida law, and such

conduct does not appear in the record before this Court. Furthermore, the Second Amended Counterclaim contains no allegations that could result in a determination that the fair market value of the repossessed Cadillac was in excess of the amount of the debt that Williams owes Grow.

In addition to claims against Grow, Williams Second Amended Counterclaim contains four additional counts, Counts VI through IX, asserting third party claims against persons not appearing as plaintiffs in the case *sub judice*. Grow argues that these third party claims should be stricken or severed.

Williams maintains that the factual substantive, material, and factual basis of his counterclaims can be found in Exhibit A (Doc. 22), which was not made part of the public record on CM/ECF due to privacy concerns. The crux of Williams counterclaims is that no notices of debts were provided by Grow to Williams regarding disputed debts until the commencement of this suit in July 2010, yet, negative credit information was reported to major credit reporting agencies which resulted in his poor credit scores. Williams further challenges whether the sale of the vehicle was commercially reasonable. This Court will now address the counterclaim counts pertaining to Grow in turn.

A. Counterclaim Count I

Counterclaim Count I alleges violations of the CCPA and the FCRA. Specifically, Williams references 15 U.S.C.§1681s-2(a)(1), §1681s-2(a)(2)(A)(B), §1681s-2(a)(3), §1681s-2(a)(7)(A)(i)(ii), §1681s-2(a)(7)(B)(i). Williams alleges that Grow violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, which makes it unlawful to knowingly furnish inaccurate information to a CRA, but fails to state any factual details. Williams further argues that additional violations occurred because Grow did not take the proper action to correct inaccurate information upon notice that it had made a false report, but again, Williams fails to set forth any factual detail. There is not a solitary fact as to why Williams contends the information provided to the CRAs was false or any details as to what notice Williams provided Grow to correct the allegedly falsely reported information. While Williams maintains that the information provided to CRAs was inaccurate, he does nothing more than make bare bone conclusory

allegations. Thus, there is no information before this Court as to how the information was allegedly reported inaccurately or how Grow failed to rectify the allegedly improperly furnished information. Furthermore, there is nothing in the record that indicates Williams notified Grow that the information provided to the CRA's was allegedly false or inaccurate. Finally, Williams was provided adequate notice pertaining to his accounts in default despite his contention to the contrary.

Williams attempts to assert a cause of action for violation of 15 U.S.C. § 1681s-2(a)(1)(A) and (B) prohibiting the furnishing of information relating to a consumer to any consumer reporting agency if the person knows or has reasonable belief that the information is inaccurate, or after notice by the consumer that the information is inaccurate. However, as the Court in *Antoine v. State Farm Mut. Auto. Ins. Co.*, 662 F.Supp.2d 1318, 1327 (M.D. Fla. 2009) establishes, "Sections 1681n and *o* [sic] respectively, address civil liability for willful and negligent noncompliance. Section 1681s-2c states that the sections regarding civil liability for noncompliance, §§ 1681n and *o* [sic], do not apply to violations of § 1681s-2(a). Pursuant to § 1681s-2(d), the provisions of § 1681s-2(a) may be enforced exclusively as provided under § 1681s by the Federal agencies and officials and the State officials identified therein." (emphasis original). That is to say, there is no private right of action under 15 U.S.C. § 1681s-2(a)(1)(A) and (B). As such, Williams' counterclaim Count I is dismissed with prejudice as any leave to amend would be futile as the allegations cannot support this cause of action.

B. Counterclaim Count II

Counterclaim Count II alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 a and g ("FDCPA"). Grow maintains that it is clear from the allegations in Count II of Williams' Second Amended Counterclaim that Grow, a federally chartered credit union, is not a "debt collector." Grow argues that any allegations pertaining to Grow relate to its attempt to collect the debt owed to it by its own debtor, and is therefore not actionable under FDCPA. Grow further contends that Count II should

be dismissed with prejudice as any leave to amend would be futile citing *Brook v. SunTrust Bank MTD, Inc.*, 2010 WL 3340311 at *2-3 (M.D. Fla. August 25, 2010).

Williams maintains that because Grow hired legal representation in this matter, such legal representation constitutes the law firm as a "debt collector", and thus, this label should be imputed to Grow. This Court finds such an argument unconvincing and unfounded in law. Only a "debt collector" may be subject to civil liability for violation FDCPA. *See* 15 U.S.C. §1692k. Section 1692a(6) states that a creditor collecting its owns debts is not a "debt collector".

Williams further alleges that no notice of outstanding debts was provided by Grow to him until this lawsuit was filed. In Williams' Second Amended Counterclaim (Doc. 19 ¶25) Williams states, "The Counter Claimant asserts that GROW failed to notify or inform the Counter Claimant of any deficiency remaining on the debt after a purported "commercially reasonable" sale was completed by GROW. Thus, GROW did not provide the Counter Claimant any opportunity for the Counter Claimant to know of any deficiency and to pay any monies due and owing after the sale was completed prior to filing GROWS's Complaint." (Doc. 19). Such an assertion is utterly false.

In a February 3, 2010, letter from Grow to Williams entitled, "NOTICE OF OUR PLAN TO SELL PROPERTY," Grow informs Williams that Grow is in possession of William's 2006 Cadillac DTS. The letter further informs Williams of Grow's intention to sell the property at a private sale sometime after February 12, 2010. (Doc. 2 p. 13) Grow goes on to inform Williams that the sale will result in a reduction of his current balance, and any surplus will be deposited to Williams share savings account and any remaining deficiency Williams will owe. Furthermore, in an April 1, 2010, letter from Grow to Williams entitled, "EXPLANATION OF CALCULATION OF SURPLUS OR DEFICIENCY," Williams is given an explanation of the amount that is still owed to Grow, beginning with the total amount of all monies owed, reduced by the sale of the Cadillac, calculating additional sale related expenses incurred by Grow, and ultimately reaching a deficiency owed by Williams. (Doc. 2 p. 14). The

April 1, 2010, letter further instructs Williams of the address to which payment should be made and also includes Grow's contact information should Williams have any additional questions. For Williams to state Grow failed to notify or inform him or any deficiency is in every respect false.

Williams further asserts that Grow violated §1692g by failing to provide the required notices. Whether or not notice is effective is immaterial unless required by the FDCPA. Title 15 U.S.C. §1692g(a) states:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing-
> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

Williams contends that notices contained in Grow's complaint are not valid to the FDCPA pursuant to 15 U.S.C. 1692g(d), which states, "A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a)." It appears Williams is confusing notice with an initial communication.

In *McKnight v. Benitez*, 176 F.Supp.2d 1301, 1303 (M.D. Fla. 2001), McKnight brought an action for violations of the FDCPA alleging the summons and complaint package served upon him constitutes an

"initial communication" which triggers the requirement for a Notice of Debt under §1692g, and the notice which was included as a part of the complaint was overshadowed and contradicted by the language in the summons, "thereby rendering this notice ineffective in violation of 15 U.S.C. §1692g(a)." The *McKnight* court addressed the issue of whether a complaint served upon a debtor is an "initial communication" within the meaning of the Act. *Id.* at 1304. The *McKnight* Court held that the term 'communication' as used in the Act does not include a 'legal action' or pleadings, and thus, since all the documents served upon McKnight were either pleadings or orders, the notice attached to the Complaint was not required. *Id.* at 1308.

The Eleventh Circuit in *Vega v. McKay*, 351 F.3d. 1334, 1336 (11th Cir. 2003), agreed with the *McKnight* court's interpretation of FDCPA holding, "We now conclude that the holding of *McKnight*, that a legal action does not constitute an "initial communication" within the meaning of the FDCPA, accurately states the law." Thus assuming *arguendo* that Williams is challenging that the complaint is an "initial communication," such an argument must fail. It is more likely that Williams misinterpreted an initial communication and required notice under the FDCPA.

Contained within Grow's complaint filed in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County (Doc.2 ¶¶ 7, 13) are notices pursuant to the FDCPA. The notices contained therein satisfy the requisite criteria as set forth in §1692g(a). Therefore, Williams' allegations are without merit. As such, Count II is dismissed with prejudice for failure to state a claim upon which relief can be granted as leave to amend would be futile.

C. Count III, IV, and V

This Court's jurisdiction over the instant case was under 28 U.S.C. §1331 as the case was removed pursuant to 28 U.S.C. §1441(b) for violations of the CCPA, FCRA, and FDCPA. As Counts I and II alleging various violations of these Acts have been dismissed with prejudice, this Court no longer has jurisdiction pursuant to 28 U.S.C. §1331. Williams' remaining claims in Count III, IV, and V,

contain no basis for which this Court may retain federal subject matter jurisdiction. Furthermore, the amounts in which Grow originally sought to recover in state court total $22,830.39, which defeats the possibility of diversity jurisdiction under 28 U.S.C. §1332. Therefore, Williams' Count I and II are hereby dismissed with prejudice and this case is to be remanded back to the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida.

D. Count VI, VII, and VIII

Williams' Counterclaim also contains the following counts, none of which relate to Grow: Count VI alleges violations of the CCPA against Bank of America; Count VII alleges violations of the CCPA and FCRA against Bank of America; Count VIII alleges violations of the FDCPA against Equitable Ascent FNCL LLC; and Count IX alleges violations of the FDCPA against Midland Credit Mgmt. Inc. Counts VI through IX are third party claims and have no nexus to the instant case as none of the named parties in Count VI through IX are named plaintiffs in the instant case. While this Court cannot rule on Counts VI through IX as they have been improperly plead, should these claims find themselves before this Court on removal in the future, this Court would rule in accordance with its previous rulings pertaining to Williams' counts I through V pertaining to Grow. Counts VI through IX are based upon the same legally flawed theory as Counts I through V and all counts contain nothing more than bare bones conclusory allegations in violation of Fed.R.Civ.P. 8. Accordingly, it is:

Case No.: 8:10-CV-01874-EAK-AEP

**ORDERED** that Plaintiff's/Counter-Defendant's, GROW FINANCIAL FEDERAL CREDIT UNION F/K/A MACDILL FEDERAL CREDIT UNION, Motion to Dismiss Counterclaim with Prejudice (Doc. 29) is **GRANTED** and this case is to be **REMANDED.** The Clerk of the Court shall close this case.

**DONE AND ORDERED** in Chambers at Tampa, Florida, this 7th day of April, 2011.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record.